IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ANDREA LEE, | ) |
| | ) |
|         Plaintiff, | ) |
| | ) CIVIL ACTION NO. |
|    vs. | ) |
| | ) |
| FLINT COMMUNITY SCHOOLS, | ) HON. |
| CITY OF FLINT, and  SOLIANT | ) |
| HEALTH, LLC | ) |
| | ) |
|       DEFENDANTS. | ) |
| | ) |
| | ) |
| Carla D. Aikens (P69530) | ) |
| Austen J. Shearouse (P84852) | ) |
| CARLA D. AIKENS, P.L.C. | ) |
| *Attorneys for Plaintiffs* | ) |
| 615 Griswold St., Ste. 709 | ) |
| Detroit, MI 48226 | ) |
| Tel:  (844) 835-2993 | ) |
| Fax:  (877) 454-1680 | ) |
| carla@aikenslawfirm.com | ) |
| austen@aikenslawfirm.com | ) |

---

## **COMPLAINT**

Plaintiff Andrea Lee, by and through her There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence

1

## JURY DEMAND

COMES NOW Plaintiff Andrea Lee and hereby demands trial by jury. As for her Complaint against Defendants, Plaintiff, Andrea Lee, states that:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff is a resident of Howell, Michigan who was hired by Defendants to work at Holmes Middle School on or about August 22, 2022.

2.      Defendant Flint Community School ("FCS") is a quasi-municipal corporation whose principal place of business is located at 923 East Kearsley Street, Flint, Michigan 48503. Learning Support Services is a department within the school system.

3.      Defendant Soliant Health, LLC ("Soliant") is a limited liability company whose principal place of business is located at 5550 Peachtree Parkway, Suite 500, Peachtree Corners, GA 30092.

4.      Defendant City of Flint is a municipal organization located in Genesee County in the State of Michigan.

5.      Jurisdiction is proper because on the basis of federal question jurisdiction pursuant to Equal Pay Act, 29 U.S.C. § 206 and diversity pursuant to 28 U.S.C. § 1332.

6.     Venue is proper in this Court pursuant to the Equal Pay Act, 29 U.S.C. § 216 because the violations of the (D)(1) giving rise to Plaintiff's claims occurred in this district.

7.     Venue is also proper in this Court because Defendant Soliant is foreign corporation located in Georgia who staffs individuals such as Plaintiff in Michigan.

8.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

## GENERAL ALLEGATIONS

9.     Ms. Andrea Lee began working for Flint Community Schools at Holmes Middle School, through a contract with Defendant Soliant, on August 22, 2022.

10.     Defendant Soliant contracted Ms. Lee to work for Defendant Flint Community Schools, who then takes over the day-to-day supervision, direction, and oversight of Ms. Lee rendering her and employee of both Defendant Soliant and Defendant Flint Community Schools.

11.     Upon information and belief, this employment situation continued the entire time during the incidents at issue.

12.     Ms. Lee worked for the school for about a month before she was involuntarily transferred to another school.

3

13.     Within this month, Ms. Lee was put in very difficult positions which made her feel uncomfortable and question the actions and morals of the school, as they continued to be in non-compliance with the law.

14.     The first occasion that displayed the non-compliance is when Ms. Lee noticed that the students with identified needs were not receiving services based on the terms stated in the IEP documents and the school was not interested in legitimately bringing the files up to compliance status.

15.     On or about August 31, 2022, Defendants and its Learning Support Services Department ("LSS") were informed of the student IEPs being in non-compliance with state law.

16.     On September 1, 2022, Ms. Lee provided an email statement of the meeting events as requested by Defendants through their agents and completed a Google Document form, requested by the principal Ms. Henwood,

17.     The Medicaid forms, provided by the district, for reimbursement were being misused/misrepresented, as the children were not given the services necessary as identified students with special needs.

18.     Ms. Lee attempted to meet with Ms. Lawrence, the acting director for LSS, but both meetings were canceled.

19.     On or about September 14, 2022, Ms. Lee Ms. Moore, assistant principal,  and Ms. Henwood, principal, about the non-compliance.

20.   Ms. Lee was asked by both individuals to continue with the non-compliant behavior.

21.   Ms. Lee reminded both individuals about non-compliance with IEP cases.

22.   The principal called Ms. Lawrence and she agreed to come at 1:00 pm.

23.   During this meeting, Ms. Lee told the group about the issues, non-compliance, the matter of opening the IEPs due to not as expected in progress reports, and the 2 IEP case matters.

24.   Despite bringing up all these issues, Ms. Lawrence said she would cancel the IEP meeting for the next day.

25.   Ms. Lee spoke with Courtney Allen, Soliant Recruiter, to inform her of what happened and as Ms. Lee drove home crying.

26.   On or about September 15, 2022, Ms. Lee returned to work and received a text message that the district sent an email about a transfer.

27.   Ms. Lee was concerned she was being terminated.

28.   That same day, Ms. Lawrence stated that Ms. Lee was being transferred to an elementary school with no say or input from Ms. Lee.

29.   Ms. Lee was further prohibited from looking at anyone else's file (not on her new caseload) after the transfer.

30.     Ms. Massie, administrative assistant for LSS called later that day stating that the communication was complete, and Ms. Lee must report to the elementary school the following day.

31.     Following this incident, Ms. Lee requested that Defendant Soliant ask for performance feedback.

32.     Defendant Soliant has not received any feedback as Ms. Courtney Allen asked the district several times and has not heard back from the district.

33.     Ms. Lee was locked out of vital educational application programs and fought hard to gain access.

34.     Defendant Soliant, elementary principal, and Chris Card were notified of the situation.

35.     After several emails that included the previously-named people, the LSS department finally gave Ms. Lee "LIMITED ACCESS."

36.     This was still an issue because she could not provide the legal documentation for the SPED position.

37.     There was no system for Ms. Lee to document student progress probes, and she facilitated that process by offering a form to complete such tasks.

38.     Ms. Lee still could not upload the form information because she did not have access to the needed programs.

39.    Ms. Lee, while handling an issue with a student that occurred, discovered that the district was out-of-compliance.

40.    When she asked questions, she was told that there really was not much could do because of the school's situation.

41.    On Tuesday, September 28, 2022, Ms. Lee went back to work.

42.    During this time, she found additional information that concerned her. She was later given a new curriculum that was expected to be taught to the students the following Monday.

43.    This further concerned Ms. Lee, as this was not enough time to learn the material and adequately instruct the students.

44.    Ms. Lee spoke to another first-grade teacher about the length of time she had to work with SFA, the school curriculum, and her concerns for preparation.

45.    It was made known that the school had worked with the curriculum for about three years.

46.    Ms. Lee again stated that she did not believe she had enough time to understand the information to teach the students, to which the teacher responded "Whoa, slow down there. It's not that big of a deal just do it."

47.    There was no curriculum for Ms. Lee to teach.

48.     She spoke with the principal, Ms. Henderson, about it, and she called the assistant LSS director Teleah Brown, who informed us that there was no established curriculum for reading or math.

49.     The assistant LSS director finally stated that she would order a specific program (Sonday System Reading), but she did not know when it would arrive, so Ms. Lee needed to come up with a backup plan.

50.     Ms. Lee clarified that the district wanted me to create a curriculum, and the principal motioned yes with her head.

51.     Ms. Henderson was informed that Ms. Lee would need time to complete the task, and she stated that she understood.

52.     Immediately after this meeting, Ms. Henderson began pushing me to provide pull-out services, which was nearly impossible given the circumstances.

53.     Later, while in her classroom, the "para pro" for the first-grade student walked into her room.

54.     Ms. Lee asked the para pro what the student could do so that she could plan for the first "pull out" appointment.

55.     The para pro became upset that Ms. Lee asked her the question and Ms. Lee explained that she would like her insight on the student since they spent a lot of time together.

56.     The para pro then told Ms. Lee that she had to go and she went to the other first-grade teacher, who later came to her and told Ms. Lee that it was not the para pro's job to tell or explain anything to her.

57.     Ms. Lee explained that the para pro had done so before.

58.     The first-grade teacher began speaking loudly while approaching Ms. Lee, stating what she had before, and that Ms. Lee was being hostile and should see her after her meeting.

59.     The first-grade teacher then walked out, slamming the door behind her.

60.     After the above incident Ms. Lee began to feel as if she would have a nervous breakdown and needed to leave.

61.     Ms. Lee contacted Defendant Soliant and discussed this matter further, and it was decided that Ms. Lee would turn her key in and leave the premise.

62.     Ms. Lee went to the front office to turn in her key and have a conversation with the principal.

63.     Upon walking into the office, she heard the first-grade teacher telling the principal that Ms. Lee was being inappropriate, among other things.

64.     Ms. Lee then walked in after hearing these things and placed the key on the desk, letting the principal know that she was not a good fit for the school, and she left the premises.

65.     On Ms. Lee's first day at the elementary school, she told the new principal what had happened at the prior location, and she stated that she would never ask Ms. Lee to do such things.

66.     There was no direction in this position, and Defendants left Ms. Lee to be on her own with no building or SPED mentor to help guide the position.

67.     During the curriculum phone calls, Ms. Lee even asked to be introduced to other elementary school SPED teachers to figure out what other SPED teachers were doing, but her requests were denied.

68.     The previous person who had my position stated that she had another person write the IEPs because she noticed "certain situations" that continuously arose because the schools "did not care."

69.     Defendants created an environment where Ms. Lee was expected to complete impossible tasks at the elementary school level and left her feeling like she was set up to intentionally fail.

70.     Upon information and belief, Ms. Lee was compensated differently than her male counterparts during her employment with Defendants.

71.    The differences in pay were not based upon seniority or merit, but rather a determination made on the basis of gender/sex.

### COUNT I
### Sex-Based Pay Discrimination In Violation Of  Equal Pay Act, 29 U.S.C. § 206(D)(1) Against All Defendants

42.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

43.    Plaintiff, a female, also here alleges that Defendants' policies, practices, decisions and actions were intentionally and/or negligently established to deny, and did deny, her equal compensation, commission, bonus and/or fringe benefits based on her status sex and/or gender.

44.    Section 206(d)(1) of the Equal Pay Act makes it unlawful for an employer "to discriminate . . . between employees on the basis of sex by paying  wages to employees . . . at a rate less than the rate at which he pays to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are performed under similar  working  conditions, except where such payment is made pursuant to (i) a seniority system, (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

45.    Defendant employed Plaintiff and a male employee in the same

11

position requiring substantially and/or comparably equal skill, effort, and responsibility, but paid Plaintiff less money, benefits and/or compensation for the same or similar work.

46.    Plaintiff and Defendants' male employees performed their jobs under similar working conditions, except that she was not given preferential treatment in routes and loads as other males.

47.    Plaintiff was paid a lower wage, benefits and/or compensation than Defendants' male employees doing substantially equivalent and/or comparable equal work.

48.    The differential in pay and/or compensation and/or benefits between female and male drivers was not due to a bona fide seniority system, a bona fide merit system, or a bona fide system that measures employee earnings by quantity or quality of work, nor was the difference in pay a result of a factor other than gender and/or sex.

49.    Defendants caused, contributed to and/or caused the continuation of wage, pay and/or compensation discrimination based on gender and/or sex, in violation of the Equal Pay Act.

50.    As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, and conspiratorial efforts in these same

regards, Plaintiff has suffered and/or continues to suffer emotional distress, resulting in damages in an amount to be proven at trial; and for which Plaintiff further seeks compensatory, exemplary and/or punitive damages and monetary relief; and, any and all other remedial and/or equitable relief; including, but not limited to, among others, injunctive, declaratory, available for equal pay violations at trial, including liquidated damages for all willful violations, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §216(b).

51.     Plaintiff seeks damages, punitive damages, liquated damages, and attorney fees and costs as remedies for Defendants' violation of her federally protected rights; especially, those enumerated in 29 USCA §215 including all those remedies available to Kristy under 29 USCA §216(b).

## <u>COUNT II</u>
**Sex/Gender-Based Discrimination in Wages in Violation of Michigan Elliott-Larsen Civil Rights Act In Employment: MCLA § 37.2202 Against All Defendants**

52.     Plaintiff incorporates by reference all allegations in the preceding paragraphs.

53.     Michigan's equal pay laws makes it unlawful for an "employer to discriminate in any way in the rate or method of payment of wages to any employee because of his or her sex."

54.     Defendants employed Plaintiff and male employees as truck

drivers, requiring substantially equal skill, effort, and responsibility.

55.    Plaintiff and Defendants' male employees performed their jobs under similar working conditions.

56.    Plaintiff was intentionally paid a lower wage compensation and/or benefits than the male employees doing substantially equal work.

57.    The differential in pay between male employees and Plaintiff was  not  based on a reasonable factor or factors other than gender and/or sex.

58.    Defendants caused, contributed to, or caused the continuation of gender and/or wage discrimination based on sex, in violation of Michigan state law.

59.    As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial; and as a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial.

60.    Plaintiff further seeks punitive damages and  all  other  injunctive, declaratory, and monetary relief available for equal pay violations at trial, including liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to MCLA 37.201, et seq.

## COUNT III
**Retaliation In Violation Of The Elliot-Larsen Civil Rights Act ("ELCRA")**
**Against Defendant Flint Community Schools and Defendant City of Flint**

72.     Ms. Lee incorporates by reference all allegations in the proceeding paragraphs.

73.     At all material times, Ms. Lee was an employee, and Defendants were employers covered by, and within the meaning of, the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq.

74.     Defendants' conduct, as alleged herein, violated the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq., which makes it unlawful to retaliate against an employee who has engaged in protected activity.

75.     A respondeat superior relationship existed because Defendants Ms. Lawrence, Ms. Moore, and Ms. Henwood had the ability to undertake or recommend tangible decisions affecting Ms. Lee or the authority to direct Ms. Lee daily work activity, as alleged in the statement of facts.

76.     Ms. Lee engaged in protected activity when she took the following actions including but not limited to repeatedly bringing attention to non-compliant actions involving the student's IEPs against Defendant.

77.     Defendants had knowledge that Ms. Lee engaged in protected behavior, because Ms. Lee repeated contacted Defendant Flint Community School's Learning Support Services ("LSS") division, sent correspondence to the

acting director of LSS Ms. Lawrence, and spoke with Ms. Moore, the assistant principal, and Ms. Henwood, the principal.

78.    After Ms. Lee engaged in protected activity, Defendants and their agents thereafter harassed Ms. Lee and took several adverse employment actions against Ms. Lee because of that activity, as alleged in the statement of facts and herein, subjecting Ms. Lee to severe or pervasive retaliatory harassment by a supervisor, including but not limited to:

    a.  Creating an atmosphere of unworkable hostility at Ms. Lee's workplace;

    b.  Transferring her to an elementary school without discussion or choice;

    c.  Creating an environment where Ms. Lee is set up for failure; and

    d.  Ignoring systemic issues of non-compliance with regulations and forcing Ms. Lee to be complicit in their cover-up;

    e.  Forcing unattainable deadlines on Ms. Lee for the creation of a new curriculum; and

    f.  Prohibiting Ms. Lee from looking at any of her pre-transfer files.

79.    Defendants and their agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Ms. Lee's rights.

80.    Ms. Lee notified Defendants and their agents of the aggressive and hostile behavior and Defendants failed to take action in regards to the mentioned behavior.

81.    As a proximate result of the Defendants' actions, Ms. Lee has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

82.    As a result of those actions and consequent harms, Ms. Lee has suffered such damages in an amount to be proven at trial. Ms. Lee requests relief as described in the Prayer for Relief below.

**COUNT IV**
**Violations Of The Michigan Whistleblowers Protection Act, M.C.L. 15.361 Et Seq. ("WPA") Against All Defendants**

83.    Plaintiff incorporates by reference all allegations in the proceeding paragraphs.

84.    Plaintiff is an employee, and Defendants constitute an employer, pursuant to and within the meaning of the WPA, MCL 15.361 et seq.

85.    Plaintiff engaged in protected activity, as alleged in the statement of facts, however, specific instances include, but are not limited to:

   a.  Other instances as alleged in the statement of facts.

   b.  Other instances to be adduced during discovery.

86.    Plaintiff was subsequently discriminated against and/or harassed, including, but not limited to the occasions when he was:

    a.  Sent correspondence to the acting director of LSS Ms. Lawrence regarding the non-compliant IEPs;

    b.  Spoke with Ms. Moore, the assistant principal, and Ms. Henwood, the principal about the non-compliant policies/procedures;

    c.  Attempted to meet several times with Ms. Lawrence;

    d.  Provided email statements of meeting events and caseload updates;

    e.  Other instances as alleged in the statement of facts.

    f.  Other instances to be adduced during discovery.

87.    At least a causal connection exists between the protected activity that Plaintiff engaged in and the discrimination he was forced to endure.

88.    Defendants, by and through their agents, acted willfully or intentionally.

89.    Defendants may assert that they have a legitimate, nondiscriminatory reason for their adverse actions. However, it is Plaintiff's position that this reason is pretextual, as evidenced by, but not limited to, the following: Creating an atmosphere of unworkable hostility at Ms. Lee's workplace; Transferring her to an elementary school without discussion or choice; and Prohibiting Ms. Lee from looking at any of her pre-transfer files.

90.    For those allegations which Plaintiff did not report, Defendants believed that Plaintiff was going to report those instances of illegality and wrong-doing.

91.    As a result of Defendants' discriminatory, adverse actions, Plaintiff suffered actual damages, compensatory damages, emotional damages, and damages to her reputation in her community and in her profession.

92.    Plaintiff has been damaged by Defendants in an amount to be proven at trial.

93.    Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT V
**Hostile Work Environment In Violation Of The Elliot-Larsen Civil Rights Act ("ELCRA") Against Defendant Flint Community Schools and Defendant City of Flint**

94.    Plaintiff incorporates by reference all allegations in the preceding paragraphs.

95.    At all material times, Plaintiff was an employee, and Defendant was her employer covered by, and within the meaning of, the ELCRA.

96.    A respondeat superior relationship existed because agents of Defendants had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct all of Plaintiff's daily work activity.

19

97.     Defendant's conduct, as alleged herein, violated the ELCRA which makes it unlawful to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

98.     Plaintiff's work environment, as alleged in the statement of facts made it so any individual who reported or spoke out against Defendant's discriminatory practices had an unworkable work environment.

99.     Moreover, Plaintiff's continual attempts to have the situation remedied, coupled with Defendants' ability to accuse Plaintiff of misbehaving made the situation untenable.

100.   The unwelcomed conduct and communication was intended to, or in fact did, substantially interfere with Plaintiff's employment, and created an intimidating, hostile, or offensive work environment, as alleged in the statement of facts.

101.   As a direct and proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

102.   As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

103.   Plaintiff requests relief as described in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

PLAINTIFF, ANDREA LEE, RESPECTFULLY REQUESTS that their Court enter judgment against Defendants as follows:

1.      Actual damages in whatever amount to which Plaintiff is entitled;

2.      Exemplary damages in whatever amount to which Plaintiff is entitled;

3.      An award of interest, costs, and reasonable attorney fees; and

4.      An order awarding whatever other equitable relief appears appropriate at the time of final judgment.


Dated:  December 27, 2022

                                    Respectfully Submitted,

                                    /s/ Austen J. Shearouse
                                    Carla D. Aikens (P69530)
                                    Austen J. Shearouse (P84852)
                                    CARLA D. AIKENS, P.C.
                                    *Attorneys for Plaintiff*
                                    615 Griswold Street, Ste. 709
                                    Detroit, MI 48226
                                    austen@aikenslawfirm.co